UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BENITO VASQUEZ,

                Plaintiff,

      v.

KITSAP COUNTY, KITSAP COUNTY
TRANSIT,

               Defendants.

CASE NO. C07-5576BHS

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

       This matter comes before the Court on the motion for summary judgment filed by Defendant Kitsap County Transit. Dkt. 45. Also before the Court are the parties' responses to the Court's order to show cause regarding sanctions, Plaintiff's motion for extension of time (Dkt. 73), and Plaintiff's motion to continue trial (Dkt. 75).

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.    Employment With Kitsap County Transit**

       In October 2001, Mr. Vasquez submitted an application for employment as a Transit Operator with Kitsap County Transit ("Kitsap Transit"). In the "Education" section of the application, Mr. Vasquez responded to the question about college or university studies by writing "San Jose Community" and "San Jose State" and indicated that he had "completed" four years. Dkt. 47-2 at 2 (application for employment).

       On April 12, 2002, Mr. Vasquez was hired as a new trainee in Routed Operations. He worked as a Routed Operator until he was terminated in March 2006.  Dkt. 45 at 3.

In June of 2002, Mr. Vasquez claims he was the victim of an assault that caused him serious physical, mental and emotional injury. Dkt. 1 at 2. Mr. Vasquez claims that he was assaulted by Kitsap Transit employees James Robert Sellars, Charles Higgins, and other John Does. Dkt. 1 at 2. No Kitsap Transit supervisors were present at the time of the assault. Dkt. 1 at 3. According to Mr. Vasquez, Mr. Sellars had a history of assaultive behavior. Dkt. 1 at 2-3. Kitsap Transit maintains that it never received a complaint from Mr. Vasquez regarding the alleged assault. Kitsap Transit further maintains that the employees alleged to have taken part in the assault vehemently deny Mr. Vasquez's accusations. Dkt. 49 at 2 (Declaration of Per Johnsen).

**B.      November 2004 EEOC Complaint**

In November 2004, Mr. Vasquez filed a charge with the Equal Employment Opportunity Commission ("EEOC") solely against Kitsap Transit. The charge alleged that certain female transit operators had informed Mr. Vasquez that they had been sexually harassed by senior transit operators and supervisors. Mr. Vasquez asserted that he spoke to his supervisor about the incident, the matter was dismissed, and he was subsequently subjected to a hostile work environment by management and senior drivers. Dkt. 45 at 3; *see also* Vasquez Dep. at 67:8-17. Kitsap Transit maintains that it never received any report from Mr. Vasquez that other employees had been subjected to sexual harassment. Dkt. 45 at 4. Kitsap Transit maintains that the only complaint received from Mr. Vasquez was his allegation that senior drivers were "picking on" junior drivers, but Mr. Vasquez would not identify the senior drivers.

On March 4, 2005, the EEOC issued a determination that it was unable to conclude that the information obtained established a violation of the statutes. Dkt. 45 at 4.

**C.      Allegations of Criminal Assault**

According to Kitsap Transit, in November or December of 2004, Mr. Vasquez submitted a complaint to the Kitsap County Prosecuting Attorney in which he alleged he was assaulted by other Kitsap County employees. Dkt. 49 at 2 (Declaration of Per

Johnsen). Kitsap Transit was contacted by the Kitsap County Sheriff's Office, which had been asked to investigate the allegations. *Id*. Defendants maintain that the Kitsap County Sheriff's Office investigator concluded that he was unable to find any evidence that Mr. Vasquez had been assaulted or that he had reported the assaults to anyone at Kitsap Transit. *Id*.

**D.  Plaintiff's Allegations During 2005 Federal Lawsuit**

On June 2, 2005, Mr. Vasquez filed a complaint in federal court against Kitsap County, Kitsap Transit, and several co-workers. *See* Dkt. 49-2 at 4 (complaint filed by Mr. Vasquez). Mr. Vasquez alleged that he was subjected to a hostile or abusive work environment because of sexual and racial harassment. *Id*. at 8. He also alleged various state claims, including assault. *Id*., 5-8.  However, on May 16, 2006, Kitsap Transit's motion to dismiss was granted on grounds of insufficient process and lack of jurisdiction. Dkt. 45 at 5.  The claims against all other Defendants were also dismissed. Dkt. 45 at 5.

According to the attorney who represented Kitsap County in Mr. Vasquez's 2005 action, Mr. Vasquez described the allegations of the 2002 assault during a court-ordered September 2005 conference call. During this call, Mr. Vasquez stated at one point that he "should have killed [Dennis Coleman, one of the alleged attackers] right there – that's what the prick deserved." Dkt. 49-2 at 11 (Declaration of Rodney B. Younker). Mr. Vasquez also allegedly finished his account of the assault by stating that when the fight ended, his "first inclination was to go home, get my gun, go back and do some killing." *Id*.

Mr. Vasquez has not denied making these statements. Rather, Mr. Vasquez explained these statements as follows:

> In a discovery conference I was asked about being assaulted in 2002 by the attorney for the union. My statements were clearly as to my state of mind over 3 ½ years prior to the conference and not intended to threaten anybody. In fact, I have never threatened anybody at Kitsap Transit with the exception to some statements while defending myself from assaults . . . . I believe Kitsap Transit intentionally exagerrated my statements in order to retaliate against me as well to demonstrate to other employees what happens to employees that [sic] reports any misconduct.

Dkt. 69 at 3 (Mr. Vasquez's declaration).

After learning of these statements, Kitsap Transit maintains that it immediately placed Mr. Vasquez on paid administrative leave in order to ensure the safety of its employees. Dkt. 49 at 3 (Declaration of Per Johnsen). Mr. Vasquez was told that the leave would "remain in effect while the agency evaluates concern for your safety and that of your fellow co-workers raised by allegations of violent altercations made in your federal lawsuit." *Id*. Kitsap Transit then required Mr. Vasquez to undergo an evaluation of his fitness for duty by Dr. Mark McClung, a psychiatrist. *Id*. Regarding the potential for violence, Dr. McClung stated that "Mr. Vasquez does not exhibit or describe any significant current distress, and does not display any decompensation in coping and mental state that would acutely increase the risk of aggression." Dkt. 49-2 at 23 (letter from Dr. McClung). Dr. McClung opined that Mr. Vasquez's "pattern and character . . . of report[ing] of the incidents" was "consistent with willful fabrication, if the events he's claiming are not factual." *Id*.

Apparently, Kitsap Transit informed several employees about Mr. Vasquez's allegations and his statements concerning his desire to kill co-workers. In response, several employees obtained protective orders against Mr. Vasquez. Dkt. 69, 6-29.

**E.      Plaintiff's Report of Alleged Atrocities**

In response to discovery requests from the individual employees Mr. Vasquez had sued for assault and battery, Mr. Vasquez revealed a "Report" that he said he drafted beginning in 2003. Dkt. 48-2 at 2 (Declaration of Roy Harrington); *see also id.*, 15-40 (copy of "Report: Kitsap County Amalgamated Transit Union Campaign of assaults, harassment, and hostile working conditions"). In his deposition, Mr. Vasquez testified that he began writing the Report around December 2003. Dkt. 46-2 at 22 (deposition of Benito Vasquez). The Report included many allegations of serious and offensive

misconduct by Kitsap Transit employees and managers.[1] Included in the Report were the following allegations:

    1.    In his May 2002 entry, Mr. Vasquez alleges that his driver/mentor Matt Matherly became very belligerent. Mr. Vasquez alleges that he observed Mr. Matherly's inappropriate involvement with individuals Mr. Vasquez called "groupies." Mr. Vasquez defined "groupies" as individuals who are "personally, socially, and in many cases intimately involved with a driver." Mr. Vasquez claimed that he observed Mr. Matherly and the "groupies" holding hands, hugging, kissing and touching private areas. Mr. Vasquez further claimed that other senior drivers, including "Whitey, Mark Dawson, and Doug Bauer" would also congregate with groupies. *Id.*, 23-24

    2.    In one of his June 2002 entries, Mr. Vasquez claimed that he was assaulted by as many as six Kitsap Transit employees. Mr. Vasquez described the assault as follows:

> At this point they were all yelling they were going to rape me. We were still struggling at this point and the driver who had my head unzipped his pants. He said "You're going to give me a blow job. And you are going to do a good job. Otherwise we're going to break every bone in your body." Then I screamed at him "You bastards just fucked up. You made the biggest mistake of your life. From here on out, you're dead meat. You are going to have to kill me. Because we are not getting out of here this easy." The same man told me "We are going to hurt you bad." Then someone started fingering my ass. My pants were still on and they were jamming their hand into my butt. At the same time this guy holding my head peeled out his dick. I said "Hey bring it over here. I'll bite the bastard off and you will never get it back. You will be a dickless fag. If you're going to do it, do it.

---

[1] Mr. Vasquez testified in his deposition that he attempted to give the Report to Mr. Johnsen in 2003 or 2004, but that Mr. Johnsen threw it back at Mr. Vasquez. Dkt. 46-2 at 20. Mr. Vasquez also maintains that he provided this report to Jeffrey Sullivan, U.S. Attorney for the Western District of Washington, and that he spoke personally to Mr. Sullivan about the Report on three or four occasions. *Id.* at 22. Mr. Johnsen denies that Mr. Vasquez ever tried to give him the Report, and stated in his declaration that he had not seen the Report prior to its production in litigation. Dkt. 49 at 4. Defendants maintain that Mr. Vasquez has not attempted to provide the Report to anyone at Kitsap Transit before he produced it in discovery in 2006. Dkt. 45, 7-8. Kitsap Transit further denies that it had been previously aware of most of Mr. Vasquez's specific allegations contained in the Report prior to discovery in 2006. In any event, in light of Mr. Vasquez's allegation that Mr. Johnsen threw the Report back at him, the parties appear to agree that Kitsap Transit never read the Report prior to 2006, and therefore did not know of its contents until 2006.

But you are going to lose. You are going to have to kill me . . . . You guys are going to be dead. Before I kill you, I'm going to kill every thing you love.

*Id*. at 30.

In the same report, Mr. Vasquez stated, "I felt like taking my gun and doing some killing. But first I needed to find out just who these pricks are." *Id*. at 31.

3.      In his June 16 through September 22, 2002, entry, Mr. Vasquez alleged that "groupies" had told him that Kitsap Transit drivers took them to a bus trailer for "orgy sex parties." Mr. Vasquez stated: "The constant presence of these groupies on the bus, their constant complaining to me while driving . . . was done solely for the purpose of harassment and for the benefit of the senior drivers." *Id*. at 35.

4.      In his July 2002 entry, Mr. Vasquez alleged he was assaulted for a second time, this time by two Kitsap Transit employees, Don Remley and Fred Rupp. *Id*. at 37.

5.      In one of his September 2002 entries, Mr. Vasquez claimed that he was in the restroom when the door opened and in walked the South Base Transit Supervisor, Dave Cole. "His pants were at his ankles. He had his thumb in his mouth as he shuffled in." Mr. Vasquez then wrote, "From that point on I do believe that this homosexual supervisor has gone out of his way to harass me and sabotage my work." *Id*. at 40.

6.      At his deposition, Mr. Vasquez testified that his August 13, 2004, entry, which is not included in the record, referenced a violent assault on a Kitsap Transit janitorial employee named Wendy by two Kitsap Transit mechanics named "Curt" and "Henry." Dkt. 46-2, 24-26. He described the event as follows:

She's screaming for help. Off the top of my head, she said someone help me, and started crying for God, and she was crying. He was – she asked Jesus to save her, cussed those guys out, don't touch me, you bastards. Her bra had been pulled up along with her shirt, her breasts were hanging out, her pants were down, halfway down her thighs, her panties were down, she had big scratch marks on her buttocks.

*Id*., 24-25.

Mr. Vasquez maintains that Kitsap Transit never properly investigated any of his claims.

After the deposition, Mr. Johnsen, the Kitsap Transit Human Resources Director, met with the female employee described as the victim by Mr. Vasquez. Dkt. 49 at 4. According to Mr. Johnsen, this employee denied that the incident ever occurred. In addition, she expressed shock that Mr. Vasquez would make such allegations, and stated that Mr. Vasquez did not know her personally. The employee allegedly resigned "within days" because she "no longer felt comfortable working at Kitsap Transit." *Id*.

After learning about Mr. Vasquez's assault allegations in August 2005, which Defendants maintain were not substantiated, Kitsap Transit decided to review Mr. Vasquez's October 2001 application for employment. Kitsap Transit wrote to San Jose City College, San Jose/Evergreen Community College, and San Jose State University asking for confirmation of Mr. Vasquez's attendance. The educational institutions wrote back that they could find no records verifying Mr. Vasquez's attendance. Dkt. 47-2, 5-9.

Mr. Vasquez maintains that he has a vocational certificate from the Department of Commerce, Civil Aeronautics Administration, but could not remember the name of the school. Dkt. 69 at 2 (Declaration of Benito Vasquez). He stated that he "was sure that [he] took classes at both the San Jose City College and San Jose State while attending high school, as well as after. *Id*. Mr. Vasquez further stated that he had no reason to be untruthful about his educational background because education was not a job requirement, and provided copies of his education records. *Id*., *see also* Dkt. 55-2 (Exhibit C).[2]

**F.  Reduction in Hours and Termination of Employment**

According to Mr. Vasquez, in January 2006 Kitsap Transit reduced his hours from 40 to 30 hours per week. Dkt. 69 at 3 (Declaration of Benito Vasquez). Mr. Vasquez maintains that the proffered reason for this reduction in hours was that he failed to "call in

---

[2] Kitsap Transit challenges this evidence because Mr. Vasquez failed to disclose these documents in his initial disclosures, or during discovery. Dkt. 80, 3-4 (*citing* Fed. R. Civ. P. 37). Mr. Vasquez maintains that he did not disclose this information to Kitsap Transit prior to March 5, 2009, because he thought the information was "top secret." Dkt. 55-2 at 3 (Declaration of Benito Vasquez).

a bid." *Id*. He states that he was on administrative leave at the time, and did not receive notice of a need to bid. *Id*.

On March 1, 2006, Mr. Vasquez received a termination letter from Roy Harrington, Kitsap Transit Operations Director. Dkt. 1 at 4; Dkt. 48-2, 42-43. The letter indicated that Mr. Vasquez would be terminated and that a pre-termination meeting was scheduled for Tuesday, March 7, 2006. *Id*. In the letter, Mr. Harrington wrote to Mr. Vasquez: "The preliminary decision to terminate your employment has been formed after consideration of the information and claims that you have brought forward as part of your litigation against the agency, your union, and three current/former employees." Mr. Harrington provided the following reasons in support of Kitsap Transit's decision to terminate Mr. Vasquez's employment: (1) Mr. Vasquez falsified his employment application by claiming he completed four years of higher education at San Jose Community College and San Jose State University; (2) Mr. Vasquez alleged a myriad of graphic and detailed accusations against co-workers, none of which had been corroborated; (3) Mr. Vasquez's allegations "slandered the agency's reputation, cost significant taxpayer dollars in unnecessary litigation defense, and have caused understandable fear and disruption among the agency's employees"; and (4) Mr. Vasquez's references to his urges to "kill" or otherwise harm co-workers raised significant safety concerns. *Id*.

On March 7, 2006, Mr. Vasquez attended the pre-termination meeting. Dkt. 1 at 5. In his complaint, Mr. Vasquez maintains that, at this meeting, Mr. Harrington stated that Mr. Vasquez was terminated because he filed an EEOC complaint. Dkt. 1 at 5. According to the complaint, Mr. Harrington allegedly held up a copy of Mr. Vasquez's EEOC complaint and stated that "a major part of the decision to terminate [Mr. Vasquez] was that he filed an EEOC complaint, and the employer was unable to corroborate his

allegations."[3] *Id*. Kitsap Transit maintains that Mr. Harrington did not have a copy of, or refer to, Mr. Vasquez's 2004 EEOC charge during that meeting. Dkt. 45 at 9. Mr. Harrington apparently did point out that Mr. Vasquez had in his Report made allegations of highly offensive conduct and violent assaults by co-workers, none of which Kitsap Transit had substantiated, and that Mr. Vasquez had affirmed under oath in a recent deposition in his federal lawsuit that he had threatened to kill fellow employees who he claimed had attacked him. *Id*.

Rita Dilenno, president/business agent of Amalgated Transit Union #1384, was present during this meeting. According to Ms. Dilenno, Kitsap Transit questioned Mr. Vasquez about the contents of his pending civil action and asked him to produce evidence of the issues of the lawsuit. Dkt. 63 (Declaration of Rita Dilenno). Ms. Dilenno maintains that Mr. Harrington "waved a stack of papers in the air while indicating that these were serious charges made by Mr. Vasquez against the employer." *Id*. at 2. Mr. Harrington allegedly "told Mr. Vasquez that Mr. Vasquez is going to provide proof of his charges at the meeting or otherwise Mr. Vasquez would be terminated." *Id*. Ms. Dilenno further maintains that Kitsap Transit informed Mr. Vasquez that he was dishonest in disclosing his education background on his application. *Id*.

Following this hearing, Kitsap Transit informed Mr. Vasquez that his employment would be terminated effective March 8, 2006. In his complaint, Mr. Vasquez also alleges that "in a letter recalling [the termination meeting], Mr. Harrington states that a major part

---

[3] Kitsap Transit maintains that Mr. Vasquez's deposition testimony contradicts his allegation that Mr. Harrington held up a copy of the EEOC complaint. *See* Dkt. 80 at 2. In his deposition, Mr. Vasquez stated that he "could not give specifics" when asked about the allegation that Mr. Harrington waved a copy of his EEOC complaint. *See* Dkt. 46-2 at 30. At the deposition, Mr. Vasquez was equivocal when asked whether he had a specific memory of Mr. Harrington stating that Mr. Vasquez was being fired because of the EEOC complaint. *Id*. However, Mr. Vasquez states in his declaration, filed on March 24, 2009, that he recalled Mr. Harrington "specifically stated that I was being terminated because of all the complaints I have made against Kitsap Transit . . . I recall [Mr. Harrington] actually using the term EEOC ." Dkt. 69 at 4. Kitsap Transit characterizes this declaration as a "sham affidavit" that contradicts Mr. Vasquez's deposition testimony.

of the decision to terminate the Plaintiff was that he filed an EEOC complaint, and the employer had been unable to corroborate his allegations." Dkt. 1 at 5. It appears that Mr. Vasquez was referring to the March 8, 2006, letter from Kitsap Transit confirming Mr. Vasquez's termination. *See* Dkt. 48-2, 45-46 (termination letter). Mr. Harrington makes no express statement in this letter that the termination was based on the EEOC complaint; nowhere in this letter is the EEOC complaint specifically referenced. *Id*. Mr. Harrington does reference sworn statements about "serious incidents . . . that have not been corroborated." *Id*. at 45.

## G.    February 2007 EEOC Charge

On February 21, 2007, Mr. Vasquez filed a charge with the Washington State Human Rights Commission and EEOC. Dkt. 81-2 at 2. Mr. Vasquez's claim read, in its entirety:

> I filed a charge with EEOC in November 2004. After I filed the complaint, I was fired. At the time I was fired, Roy Harrington told me that my employment was being terminated because I had filed a complaint with the EEOC. I was fired in retaliation for filing a complaint with EEOC, which I believe is in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id*.

On July 26, 2007, the EEOC issued a Dismissal and Notice of Rights. Dkt. 70 at 4.

## H.    The Instant Action

On October 19, 2007, Mr. Vasquez filed a complaint against Defendants. Dkt 1. In his complaint, Mr. Vasquez alleged negligent hiring and negligent supervision because Kitsap Transit had knowledge of Sellars' history of assault behavior, hired Mr. Sellars, and failed to supervise him.  Dkt. 1 at 2-3.  Furthermore, Mr. Vasquez alleged that Kitsap Transit created a hostile work environment and subjected Mr. Vasquez to sexual and racial harassment.  Dkt. 1 at 3-4.  Finally, Mr. Vasquez alleged wrongful termination based on retaliation for pursuing claims under Title VII of the Civil Rights Act of 1964, 24 U.S.C. § 000e.  Dkt. 1 at 4-5.

By Order dated January 24, 2008, the Court dismissed all claims against Kitsap County without prejudice. Dkt. 18. By Order dated February 4, 2008, the Court dismissed Mr. Vasquez's claims against Kitsap Transit of negligent hiring, negligent supervision and hostile work environment. Dkt. 23. Only Mr. Vasquez's wrongful termination claim against Kitsap Transit remains.

According to his response to Defendant's motion for summary judgment, Mr. Vasquez claims that the following actions constitute adverse employment actions, which resulted from Kitsap Transit's retaliation for Mr. Vasquez's filing of an EEOC charge and a lawsuit:

1.    Kitsap Transit placed Mr. Vasquez on administrative leave in September 2005.

2.    Several co-workers obtained protective orders against Mr. Vasquez, also in September 2005.

3.    Kitsap Transit directed that Mr. Vasquez undergo a physchological evaluation in October 2005.

4.    Kitsap Transit failed to reinstate Mr. Vasquez from administrative leave upon receipt from the phychologist that Mr. Vasquez "was not a threat."

5.    Kitsap Transit's issuance of a letter of intent to terminate Mr. Vasquez, and the subsequent employment termination. Dkt. 68, 6-7 (Plaintiff's response to Defendant's motion for summary judgment).[4]

## II. DISCUSSION

On January 8, 2009, Defendant Kitsap Transit moved to dismiss Mr. Vasquez's claim for wrongful termination. Dkt. 45.

_____

[4] Mr. Vasquez's complaint alleges "wrongful termination," but does not allege any adverse employment action other than his employment termination. *See* Dkt. 1. Kitsap Transit challenges Mr. Vasquez's newly-asserted adverse employment actions, arguing that he failed to include these in his February 2007 EEOC charge, and that these allegations are not like, or reasonably related to, the allegations contained in the charge. Dkt. 80 at 5.

This motion was originally noted for January 30, 2009, in accordance with Local Rule CR 7(d)(3).

Mr. Vasquez initiated this action pro se. On August 7, 2008, attorney Anthony Gambrel filed a declaration seeking a continuance of the trial date on Plaintiff's behalf. Dkt. 42. However, Mr. Gambrel failed to file a notice of appearance in this matter until March 5, 2009, nearly seven months after his August 7, 2008, declaration, and well after the January 30, 2009, noting date.

On February 17, 2009, the Court issued an order allowing Mr. Vasquez an opportunity to file a response to Defendant's motion for summary judgment "because Plaintiff is proceeding pro se." Dkt. 50. The Court regarded Mr. Vasquez as proceeding pro se because Mr. Gambrel had not yet filed a notice of appearance. The February 17, 2007, order extended the deadline for Mr. Vasquez's response to March 2, 2009. Mr. Vasquez did not meet this deadline.

The Court again extended the deadline for responding to the motion for summary judgment to March 20, 2009, which is the date Mr. Gambrel requested in a motion for extension filed March 6, 2009. Dkt. 64. Without explanation, Mr. Gambrel again missed a court deadline, and filed a response to the motion for summary judgment on March 24, 2009.[5] Dkt. 68. However, Mr. Gambrel did submit Rita Dilleno's declaration on March 16, 2009. Dkt. 59.

Under Local Rule CR 7(b)(2), if a party fails to file papers in opposition to a motion, such failure may be considered by the Court as an admission that the motion has merit. Because Plaintiff failed to meet two extensions granted by the Court, his failure to file a response could be considered an admission that Defendant's motion has merit.

---

[5] On March 26, 2009, Mr. Gambrel filed a motion for extension, and moved the Court to consider his untimely response. Dkt. 73. Mr. Gambrel stated that the delay in filing the response was due to a medical emergency. *Id*. While the Court sympathizes with Mr. Gambrel's medical issues, it is not clear why these issues precluded Mr. Gambrel from addressing the untimeliness of his response when he filed the actual response on March 24, 2006. Only after the Court indicated that it may not consider the untimely response did Mr. Gambrel file his motion for extension. *See* Dkt. 72.

However, the Court has considered the entire record, including Plaintiff's untimely response, and concludes that Plaintiff's claims should be dismissed.

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e).

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific

statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.      Retaliation**

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir. 1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

If a plaintiff can show that an illegal consideration was a "motivating factor" in the adverse employment action taken against him, the burden of persuasion shifts to the defendant to show by a preponderance of the evidence that it would have made the "same decision" even if it had not considered the illegal factor. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989). This "same decision" defense applies to retaliation cases. *See Funai v. Brownlee*, 369 F. Supp. 2d 1222, 1228 (D. Hawaii 2004) ("the Ninth Circuit has clearly contemplated the possibility of mixed-motive retaliation claims") (citing *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1067 (9th Cir. 2003)).

Kitsap Transit concedes that Mr. Vasquez engaged in protected activities by filing an EEOC complaint and the 2005 lawsuit, and that his termination constituted an adverse employment action. However, Kitsap Transit maintains that Mr. Vasquez cannot establish a prime facie case of retaliation because he cannot establish a causal connection between the discharge decision and his protected activity. Dkt. 45 at 12. Kitsap Transit further asserts that, even if a prima facie case has been established, Mr. Vasquez's claim fails because he was terminated for legitimate, non-retaliatory reasons. Dkt. 45 at 15. Defendant also challenges the evidence provided by Mr. Vasquez that Kitsap Transit's legitimate reasons were pretextual. Dkt. 45 at 20. Finally, Kitsap Transit argues that even

if Mr. Vasquez could produce direct evidence that his EEOC charge and Title VII litigation in any way motivated the decision to terminate Mr. Vasquez's employment, Kitsap Transit would still have made the same decision for legitimate reasons. *Id*., 21-22.

### 1. Causation

Mr. Vasquez maintains that Rita Dilenno's declaration supports his claim that Kitsap Transit terminated his employment in retaliation for filing the EEOC charge and the lawsuit. Dkt. 68 at 5. Kitsap Transit counters that the only document Mr. Vasquez was placed on administrative leave in retaliation for filing the complaint.[6] While this employment action took place during the 2005 litigation, Kitsap Transit quite clearly reacted in response to Mr. Vasquez's statements concerning

The Court disagrees with Mr. Vasquez's assertion that Ms. Dilenno's declaration provides "direct evidence" that Mr. Vasquez was retaliated against for filing the EEOC charge and lawsuit. While Ms. Dilenno stated in very general terms that Mr. Harrington questioned Mr. Vasquez about the lawsuit, she provided no statements that suggest Mr. Vasquez was fired in retaliation for filing the lawsuit. The Court agrees with Kitsap Transit's assertion that an employer is not prohibited from taking appropriate action when it learns of an employee's misconduct as a result of the EEOC or litigation process. The Court also finds dubious Mr. Vasquez's argument that causation has been established in light of the fact that he was not terminated until March 2006, approximately 16 months after filing the EEOC charge and 7 months after Kitsap Transit was served with Mr. Vasquez's lawsuit. In addition, Mr. Vasquez has failed to provide any evidence of causation for his allegation that he was placed on administrative leave in retaliation for filing the complaint.[6] While this employment action took place during the 2005 litigation, Kitsap Transit quite clearly reacted in response to Mr. Vasquez's statements concerning

---

[6] In any event, Mr. Vasquez did not allege this "adverse employment action" in his EEOC charge.

ORDER - 15

his urge to kill or otherwise harm co-workers.[7] Kitsap Transit's decision to order the psychological evaluation was similarly in response to Mr. Vasquez's violent statements.

At best, Ms. Dilenno's declaration provides circumstantial evidence in support of Mr. Vasquez's prima facie case because of Mr. Harrington's alleged statements concerning Mr. Vasquez's lawsuit. Her statements that Mr. Harrington "waved a stack of papers" may raise a factual issue as to whether Mr. Harrington was waving copies of the EEOC charge or lawsuit complaint, or whether Mr. Harrington was referring to Mr. Vasqeuz's "Report." However, as discussed below, Kitsap Transit had legitimate, non-retaliatory reasons for terminating Mr. Vasquez's employment.

In addition, for purposes of deciding this motion, the Court has considered Mr. Vasquez's statement that Mr. Harrington told him that he was being terminated because "of all the complaints [Mr. Vasquez] had made against Kitsap Transit." Dkt. 69, 1-4.[8] The Court notes that, while Mr. Vasquez now states that Mr. Harrington used the term "EEOC," Mr. Vasquez does not state in his recent declaration that Mr. Harrington "waved" the EEOC complaint. Nor does he now maintain that Mr. Harrington stated that the EEOC complaint was the reason for Mr. Vasquez's termination. Rather, Mr.

---

[7] Mr. Vasquez's contention that co-workers' decisions to obtain protective orders constitutes an adverse employment action merits little discussion. It would be irresponsible for this Court to discourage employers from informing employees about threats made against them by a co-worker, unless an employer had compelling evidence proving that the allegations of threats were false. Here, an employee's decision to seek a protective order cannot be considered an adverse employment action on the part of the employer.

[8] Whether Mr. Vasquez's affidavit (Dkt. 69, 1-4) constitutes a "sham affidavit" is a close question. In the Ninth Circuit, a district court may not disregard a declaration unless it has first made a factual determination that the affidavit is a "sham." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). A "sham" affidavit is one that "flatly contradicts" earlier testimony. *Id.* However, it appears that Mr. Vasquez's affidavit did not "flatly contradict" the deposition testimony because he did not state that Mr. Harrington actually waved the EEOC complaint during the pre-termination meeting. Rather, he indicated that Mr. Harrington used the term "EEOC" at "one point" during the meeting. *Id.* Although wavering during the deposition, Mr. Vasquez does state at one point that Mr. Harrington mentioned the EEOC complaint. *See* Dkt. 46-2 at 31:126 ("[Mr. Harrington] says, your complaint – I'm not talking about holding up like this (indicating). Your complaint with the EEOC").

Harrington allegedly stated that Mr. Vasquez was being fired for "all the complaints" made against Kitsap Transit. Mr. Vasquez's complaints against Kitsap Transit, which include those made in his "Report," go beyond the contents of the EEOC charge and his Title VII claims, and include the unsubstantiated and controverted allegation of a sexual assault against Wendy, the janitorial employee, among other unsubstantiated claims. The Report also included the violent statements about his urges to kill or otherwise harm co-workers.

Viewing this case in the light most favorable to Plaintiff, the Court concludes that Mr. Vasquez has established a prima facie case for purposes of this order only.

### 2. Employer's Proffered Reasons for Terminating Plaintiff's Employment

Kitsap Transit has provided legitimate, non-retaliatory reasons for terminating Mr. Vasquez's employment. Mr. Vasquez argues that Kitsap Transit "exaggerated" his statements concerning his urges to kill or otherwise harm co-workers. He argues that "it is difficult to conceptualize that the Employer's actions with regard to the alleged threat to other employees is anything but retaliation." Dkt. 68 at 11. Mr. Vasquez goes so far as to suggest that Mr. Vasquez's statements are protected activities merely because he made these statements in relation to his lawsuit, without citing any authority for this proposition. *Id*. Mr. Vasquez's arguments are unpersuasive.

Kitsap Transit did not "exaggerate" Mr. Vasquez's statements.[9] Mr. Vasquez does not deny making the following statements during the 2005 litigation and in his "Report": "My first inclination was to go home, get my gun, and do some killing," and "Before I kill you, I'm going to kill everything you love." The seriousness of these statements is not diminished by Mr. Vasquez's assertion that he was merely expressing his thoughts as of

---

[9] Mr. Vasquez cites *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185 (9th Cir. 2003), in support of his argument that Kitsap Transit exaggerated his violent statements. *Raad* is inapposite. In *Raad*, the employer misunderstood the employee's statement that she did not want to "blow up," meaning that she was angry, as a threat to "blow up" a building. This is quite different than Mr. Vasquez's statement that he wanted to go home, get his gun, and "do some killing."

ORDER - 17

the time he was allegedly attacked. Kitsap Transit cannot be expected to be assured that Mr. Vasquez did not pose a threat simply because he now states that he did not intend to harm anyone. In addition, Kitsap Transit cannot be expected to gamble its employees' safety on the likelihood of Mr. Vasquez acting on his statements by relying upon one psychologist's opinion that Mr. Vasquez would not likely become aggressive.

The Court also agrees with Kitsap Transit's argument that "Mr. Vasquez's Report of alleged atrocities and expressed desire to commit violence against fellow workers are distinct and separable from his protected pursuit of an EEOC charge and Title VII claims." Dkt. 80 at 7.

In sum, an employer cannot be discouraged from reacting to an employee who makes violent threats against other individuals, nor should an employer ignore threats made by an employee simply because that employee has filed an EEOC charge or lawsuit. Kitsap Transit acted appropriately to protect the safety of its employees.

Kitsap Transit offered additional legitimate, non-retaliatory reasons in support of its decision to terminate Mr. Vasquez's employment. First, Kitsap Transit determined that Mr. Vasquez had been untruthful on his employment application regarding his educational background. While Mr. Vasquez has now provided documentation in support of his argument that he was not untruthful on his application, he did not provide this when he had an opportunity to do so during the pre-termination meeting. Mr. Vasquez admits in his declaration that he did not provide this information prior to March 5, 2009, because he deemed the information confidential. Even assuming Kitsap Transit was incorrect in determining that Mr. Vasquez was untruthful about his educational background, it did not make this determination in order to proffer a "phony reason" to terminate Mr. Vasquez. *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) (pretext does not simply mean a "mistake," but rather "a lie, specifically a phony reason for some action"). Kitsap Transit acted appropriately in seeking to determine whether Mr. Vasquez had lied about his employment because Mr. Vasquez had made a series of inflamatory, unsubstantiated, and controverted accusations. In addition, Kitsap Transit received information from

educational institutions that Mr. Vasquez had never been a student at the institutions he claimed to have attended.

Second, Mr. Vasquez's repeated accusations of outrageous and violent conduct on the part of co-workers had disturbed the workplace, caused employees to obtain restraining orders, and may have caused some employees to resign from Kitsap Transit. Mr. Vasquez has not provided any evidence beyond his own assertions to substantiate any of these claims. With regard to allegations that other employees had been harassed, Mr. Vasquez offers no corroborating evidence that any employee claimed to have been harassed. His claim that an employee was attacked was refuted by the alleged victim. Mr. Vasquez has not offered a single piece of evidence in support of any of his allegations. Mr. Vasquez also subjected the employer and employees to an investigation by the Kitsap County Sheriff's Office, which found no evidence of wrongdoing. Kitsap Transit acted reasonably in determining that none of Mr. Vasquez's accusations had merit. It also had overwhelming evidence that Mr. Vasquez engaged in a pattern of deception from the time he completed his employment application through numerous allegations that Kitsap Transit was justified in finding were untrue.

### 3. Pretext

Mr. Vasquez fails to demonstrate that Kitsap Transit's proffered reasons for terminating his employment were pretext for a retaliatory motive. Even if Ms. Dilenno's declaration did provide evidence of a retaliatory motive, Kitsap Transit had independent, legitimate reasons for terminating Mr. Vasquez's employment.

Mr. Vasquez has stated that Mr. Harrington suggested that he was being terminated based in part on the EEOC charge. However, the Court concludes that, as a matter of law, Kitsap Transit proffered legitimate, non-retaliatory, and independent reasons for terminating Mr. Vasquez's employment. Most importantly, Kitsap Transit reacted to ensure the safety of the workplace. If Mr. Vasquez had not filed an EEOC complaint or lawsuit, or otherwise engaged in protected activity, there is no question that

Kitsap Transit's interest in not tolerating explicit threats to its employees constituted an independent basis upon which to terminate Mr. Vasquez's employment.

With regard to the other reasons for Mr. Vasquez's termination, the Court finds no evidence of pretext for the reasons discussed in Section (2) above.

## III. SANCTIONS

The Court may order monetary sanctions against an attorney who fails to comply with a scheduling or pretrial order. Fed. R. Civ. P. 16(f). Any sanction must be "proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1479-80. The sanctionable conduct must amount to "recklessness, gross negligence, repeated – although unintentional – flouting of court rules, or willful misconduct." *Id*.

On March 17, 2009, the Court issued an order to show cause regarding the issue of whether Plaintiff should reimburse Defendant for costs associated with responding to Plaintiff's motions. Dkt. 64. Specifically, the Court ordered Mr. Gambrel to show cause as to why he should not reimburse Kitsap Transit for the following: (1) the costs of responding to Mr. Gambrel's motion for extension of time to respond to Defendant's motion for summary judgment; (2) the costs of filing a surreply on the same motion; and (3) the costs of filing a reply regarding the motion for summary judgment. *Id*. at 4.

Mr. Gambrel states that "he does not dispute . . . [that] he should be sanctioned for the additional costs incurred by the Defendant in that it would be inequitable for the Defendant to absorb the costs when it has not caused any delays." Dkt. 73 at 4. Kitsap Transit responded with a declaration of costs. Dkt. 78.

Plaintiff's counsel has engaged in a pattern of missing deadlines, causing delay, and prejudicing Kitsap Transit by forcing it to incur legal costs. As a result, the Court delayed consideration of Kitsap Transit's motion for summary judgment for more than two months.

As indicated in the Court's March 17, 2009, order, Mr. Gambrel failed to demonstrate excusable neglect for his failure to meet the January 30, 2009, or the March

2, 2009, deadlines for responding to Defendant's motion for summary judgment. First, while the Court does not fault Mr. Gambrel for medical problems, the Court finds questionable Mr. Gambrel's explanation for his failure to respond to the summary judgment motion. Not only did Mr. Gambrel fail to respond or request additional time to respond prior to the January 30, 2009, noting date, he also missed the March 2, 2009, extension the Court granted sua sponte. The Court also notes that Mr. Gambrel again missed a deadline by failing to respond or to request an extension for the March 24, 2009, deadline (the third extension). *See supra* at 12, footnote 5. All of the court's orders, as well as the Defendant's motion, were posted on the electronic docket. Additionally, Defendants served both Mr. Vasquez and Mr. Gambrel with its motion for summary judgment. *See* Dkt. 45 at 24 (certificate of service); Dkt. 55-3 (declaration of Alexander Gambrel). Mr. Gambrel failed to offer a plausible explanation for failing to respond in any manner prior to March 6, 2009.

The Court also finds questionable Mr. Gambrel's statement that he did not file a notice of appearance in this matter until March 5, 2009, because Mr. Vasquez did not provide him with a copy of the Court order continuing the trial date. *See* Dkt. 60 (Plaintiff's reply). Even if the Court were to accept this explanation, Mr. Gambrel states that in September 2008, he did find out that the matter was continued. *Id*. at 1. Mr. Gambrel went on to represent Mr. Vasquez during depositions, yet did not file an appearance until March 5, 2009.

The Court concludes that Plaintiff's counsel should reimburse Kitsap Transit for the costs associated with responding to Plaintiff's motion to allow more time to respond to Kitsap Transit's motion for summary judgment (Dkt. 55). In addition, counsel should reimburse Kitsap Transit for the costs of filing a surreply, because Mr. Gambrel raised issues in his reply that should have been raised in his initial motion. *See* Local Civil Rule 7(g). However, because the Court considered Plaintiff's response, and found Kitsap Transit's reply to be useful in deciding its motion for summary judgment, Mr. Gambrel should not be required to reimburse Kitsap Transit for the costs of preparing the reply.

Kitsap Transit asserts that the cost of research and preparing materials to respond to Plaintiff's motion for additional time to respond to the motion for summary judgment amounts to $2115.00 in fees, for 9 hours of work. It asserts that the costs of preparing the surreply amounts to $705.00, for 3 hours of work. The Court finds that 5 hours for preparation of both briefs, at the rate of $235 per hour, to be reasonable. Accordingly, Plaintiff's counsel is ordered to make payment of $1,175.00 to Kitsap Transit.

## IV. ORDER

Therefore, it is hereby **ORDERED** that:

1.      Plaintiff's motion for extension of time to respond to Defendant's motion for summary judgment (Dkt. 73) is **GRANTED**;

2.      Defendants' motion for summary judgment (Dkt. 45) is **GRANTED** and Plaintiff's remaining claim for wrongful termination is **DISMISSED with prejudice**;

3.      Plaintiff's second motion to continue trial (Dkt. 75) is **STRICKEN** as moot; and

4.      Plaintiff's counsel is ordered to make payment of  $1,175.00 to Defendant Kitsap Transit as stated herein.

DATED this 10th day of April, 2009.



BENJAMIN H. SETTLE
United States District Judge